## BEATON v. CONTINENTAL SOUTH-LAND SAVINGS & LOAN ASS'N et al.

No. 12065.

Court of Civil Appeals of Texas. Dallas. Jan. 9, 1937.

Rehearing Denied Feb. 13, 1937.

Thompson, Knight, Baker & Harris and R. G. Scurry, all of Dallas, for appellant.

Hamilton, Hamilton & Turner, Wm. H. Flippen, and Dan P. Johnston, all of Dallas, for appellees.

JONES, Chief Justice.

Appellant, Ralph A. Beaton, instituted this suit July 1, 1930, against the Continental Southland Savings & Loan Association, to recover damages for the breach of a contract of employment entered into on January 30, 1929. By an amended petition filed March 14, 1934, the Metropolitan Building & Loan Association was made a party defendant. The same cause of action was alleged as in the original petition, and the additional allegations that, at a special meeting of the shareholders of the original defendant, September 8, 1932, a

plan for reorganization was adopted, whereby 75 per cent. of the then book value of the Continental Southland ·Savings & Loan Association's assets were transferred to the Metropolitan Association, a new corporation, with the same officers and directors as the old organization; that the shareholders of the Continental Southland Savings & Loan Association turned in and canceled 75 per cent. of their shares in the old corporation and· accepted reissued stock in the Metropolitan Association in lieu thereof, and alleged, by proper allegations, that the Metropolitan Association thereby became jointly liable to appellant for damages because of the breach of his contract.

The Continental Southland Savings & Loan Association will be designated the "Continental," and the Metropolitan Building & Loan Association will be designated the "Metropolitan"; plaintiff will be designated "appellant."

The Continental filed an amended answer, and the Metropolitan also filed an answer in the case. These answers include a general demurrer and a number of special exceptions. Special exception No. 3, in the answer of the Continental, and special exception No. 10, in the answer of the Metropolitan, are in identical language. The court sustained the general demurrer of each of the defendants, and sustained special exception No. 3 in the answer of the Continental and special exception No. 10 in the answer of the Metropolitan. These special exceptions had the force of a general demurrer. Appellant declined to amend, and a final judgment of dismissal was entered in favor of both defendants. An appeal has been perfected to this court.

The contract breached is a written contract of employment, under the terms of which appellant was employed for a period of ten years at a salary of $2,000 per month, payable semimonthly. At the time of the alleged breach, appellant had received his salary for nine months, representing payments from February 1, 1929, to November 1, 1929.

Continental filed a cross-action against appellant, seeking to recover the $18,000 it had paid appellant; the allegations in such cross-action showed on their face that such cross-action was barred by the statute of limitation applicable thereto; and the allegations were stricken out on special exception. Continental declined to amend, and a final judgment of dismissal was entered against Continental on its said cross-action. Continental gave notice of appeal, but has perfected no appeal therefrom; hence its cross-action will not be further noticed.

██ As this is an appeal from the sustaining of a general demurrer and a special exception, having the force of a general demurrer, the material facts alleged in the petition become the statement of facts in this case. Appellant, in his brief, presents what he terms a "skeleton outline" of his petition, and we copy it, as stating the most material facts alleged in the petition, making some additions thereto. These facts are stated more in the form of conclusions, but are based on full and specific allegations in the second amended original petition, on which the case went to trial. The statements are:

"For many years prior to January 30, 1929, plaintiff had been the active executive and manager of the Continental. Indeed, he organized the Company, and by his energy and ability developed it from a building and loan association having virtually no assets, to one of the outstanding building and loan associations of the Southwest, with assets in excess of Ten Million Dollars. Plaintiff himself was recognized as one of the ablest and most successful building and loan organizers and executives in the Southwest, and during those years acquired a wide and valuable experience, became acquainted with thousands of shareholders of defendant Continental, and possessed a goodwill of great value to said institution. In January, 1929, the Continental agreed upon a consolidation with a rival building and loan association known as Southland Building & Loan Association, by purchasing the assets and business of the latter company, and it was in good faith believed by all concerned as a condition of said consolidation that it was wise to retain and preserve the services and experience of plaintiff for the benefit of the enlarged Continental for a period of years, and to procure from plaintiff an agreement not to become identified with any competitive building and loan association in Dallas County during such period of years, and that unless such arrangements were made with plaintiff the consolidation would not be wise or desirable and would not work out satisfactorily.

"Accordingly, on January 30, 1929, and contemporaneously with such consolidation,

plaintiff and Continental entered into a written contract, by the terms of which Continental employed plaintiff, and plaintiff agreed to·serve Continental, for a period of ten years in various capacities therein stated, at a salary.of $2,000.00 per month, which was less than the compensation which plaintiff, by reason of his ability and experience, had for some years commanded in the building and loan business. Also, plaintiff further agreed in said contract not to become identified with any other building and loan association in Dallas or out of Dallas but doing business in Dallas, for the period of the contract and for six months thereafter."

The consolidation of the two building and loan aassociations became effective on January 30, 1929, and on the same date the contract in question was entered into. Appellant, on February 1, 1929, began the discharge of the duties he assumed under the contract, devoted his entire time to the discharge of such duties, and refrained from making any connection with competing associations. On October 21st, without any cause, so far as the discharge of his contract duties were concerned, appellant was summarily discharged. Appellant received monthly pay for the entire month of October, but received no pay thereafter, though he was ready, able, and willing to continue to perform his contract.

The petition shows that appellant, in the capacity in which he was employed, was a valuable asset to the Continental and would have been so to other building and loan associations. His contract salary was $24,000 per year, or $240,000 for the ten-year contract period. The maximum recovery sought was $222,000 for the remainder of the entire contract period. However, there was an alternative plea for the recovery of the amount of his salary that had accumulated up to the date of the trial. The contract entered into reads as follows:

"The State of Texas
"County of Dallas

"Whereas, Continental Savings & Building Association contemplates purchasing the Southland Building & Loan Association, and is unwilling so to do unless and until Ralph A. Beaton agrees, binds and obligates himself in writing to remain with the Continental for a period of Ten (10) years:

"Now therefore, this memorandum of an agreement made and entered into by. and between Continental Savings & Building Association, a corporation duly incorporated under and by virtue of the laws of the State of Texas, with the principal offices and place of domicile in Dallas, Dallas County, Texas, hereinafter styled Continental Association, and Ralph A. Beaton, of Dallas, Dallas County, Texas, hereinafter styled second party, witnesseth:

"(a) The duties of the said Ralph A. Beaton shall be ˙that he act in an advisory capacity, faithfully, impartially and to the best of his ability, consult and advise with the executive officers of the ·Continental Association when called upon, attend all meetings of the directors of the Association and meet and advise with all special committees unless unavoidably detained, support and promote the good will of the Association, defend and maintain its good name and its policies.

"(b) The said Ralph A. Beaton further agrees, binds and obligates himself not to become identified with any other Building and Loan Association in Dallas County, or out of Dallas County and operating in Dallas, for a period of ten years (the life of this contract) or within six months after its termination, and the said Beaton shall assist in protecting the good name of the Association, and shall in good faith support and sustain˙ the good name of the Continental Association, regardless of any contingencies, misunderstandings or differences that may arise, provided same have first been submitted .and passed on by a majority of the Board and the general attorney of the Association.

"The limitations as contained in the preceding paragraph hereof shall in .no wise apply to E. Y. Chambers & Company, Inc. (a corporation of which Ralph A. Beaton is a stockholder and officer), its successors or assigns, ˙or to any service agreeable to the Continental Association first evidenced by consent in writing.

"In consideration of the faithful performances of the duties as named and provided to be kept and performed by the said Ralph A. Beaton, the Continental Association here and now agrees to pay said Ralph A. Beaton, at the rate of Two Thousand ($2000.00) Dollars· per month, payable in semi-monthly installments on the 15th and last days of each calendar month, for the term of ten years, in accordance with the provisions of this agreement, effective on and after February 1, 1929.

"In testimony whereof the said Continental Savings & Building Association has caused this instrument to be signed by L. O. Donald, its President, duly attested by G. A. McGregor, its Secretary, with its corporate seal affixed, thereunto duly authorized by its Board of Directors, and witness the hand of Ralph A. Beaton, each in duplicate originals, at Dallas, Texas, this the 30th day of January, 1929.

"Continental Savings & Building
Association

"By [Signed]   L. O. Donald, President
"[Signed]   Ralph A. Beaton.

"Attest:   [Signed] G. A. McGregor,
Secretary.

"[Seal]."

■ The introductory paragraph of the contract, to the effect that the Continental was unwilling to consolidate with the Southland Association, unless appellant "agrees, binds and obligates himself in writing to remain with the Company for a period of ten years," is not borne out by the facts alleged in the petition. Under the statutes of this state, building and loan associations can consolidate only by a vote of the shareholders, and, as no allegation to the effect that the shareholders of the Continental voted on the condition above stated, as a part of the plan of consolidation, it did not become a condition of the consolidation.

■ The by-laws of the association and the contract in question were attached as exhibits to appellants' second amended original petition, and, by appropriate allegations, were made a part of the petition. The by-laws of the Continental, therefore, become a part of the statement of facts in this case.

Special exception No. 3 and special exception No. 10, in the respective answers of the Continental and Metropolitan, being in identical language, read: "This defendant specially excepts to plaintiff's Second Amended Original Petition because it affirmatively appears therefrom that the plaintiff seeks to recover upon an alleged written contract of employment of the plaintiff by defendant association, a Texas Corporation, covering a period of ten years, and it does not appear therefrom that the officers or Board of Directors, or either of them, had any authority in fact or in law, to make such a contract for such period of time, and under the allegations of fact as contained in said petition, it af-firmatively appears that the officers and directors of said defendant Association had no authority to make such contract of employment for a period of ten years, and said contract is in law void and has no force or effect which will bind this defendant, either upon contract or upon tort, or for compensation for services or for damages."

This, though in the form of a special exception, is in effect a general demurrer and states the grounds on which the formal general demurrer was sustained, and presents, concretely, the issues of this appeal.

The Continental and the Metropolitan were created under the provisions of title 24, R.C.S., and are governed by the provisions of said title. As originally enacted in 1913 (Acts 1913, 1st. Called Sess., c. 33), such title includes articles 852 to 881. However, in 1929 (Acts 1929, 2d Called Sess., c. 61), the building and loan law was amended by adding to title 24, supra, articles 881a-1 to 881a-60, inclusive (Vernon's Ann.Civ.St. arts. 881a-1 to 881a-60). Under the by-laws of the association, to be qualified as a director, a person must be the owner of not less than 10 shares of stock; and under article 881a-32, there is a similar qualification required of a director. The corporate powers of a building and loan association are vested by article 854 in the board of directors. The by-laws of the Continental also vest the corporate powers of the association in its board of directors. Various articles of title 24, supra, give the banking commissioner very broad powers of supervision of building and loan associations.

The by-laws of the Continental provide that the board of directors shall be elected at the annual meeting of the shareholders and make the tenure of office one year. The by-laws further provide that the officers of the Continental shall consist of a president, vice-president, secretary-treasurer, assistant secretary-treasurer, and general attorney; and specifically defines the duties of each, the secretary-treasurer being made the managing executive of the association. These officers shall be elected from the members of the board of directors and the tenure of office is one year. No one under the by-laws can own more than 500 shares in the Continental.

It appears from numerous provisions of title 24, supra, that it is the policy of this state that building and loan associations, the acts of their directors and officers, are

under the close and constant supervision of the state's delegated officer—the state banking commissioner. It also appears from the by-laws of the Continental that its shareholders have the right of annual supervision through the election each year of the entire body of the board of directors. By the means of such annual election of the directors, the shareholders are clothed with the ultimate power of direction in the administrative work of the instant association. If the board of directors has acted unwisely in administering the affairs of the association, or if any of the executive officers elected by the board of directors have shown that they were incompetent to carry on the administrative affairs of the association, all of this can be changed at the annual meeting by the election of a new board of directors, with views in harmony with those of the shareholders. In its last analysis, the shareholders, and not the board of directors, are the sovereigns of the instant building and loan association. If the board of directors should prescribe that a certain administrative course should be pursued for a period of ten years, such act would be void. Why? Because it takes from the incoming board of directors, stamped with the approval of the shareholders, the powers given it both by statute and by the Continental by-laws. But, over and above this, it is void, for the reason that, for the period of ten years, it denies to the shareholders the ultimate and final power in such matters, the right to elect the board of directors to carry out their administrative ideas.

■ Coming to the immediate question under review, on January 29, 1930, a board of directors attempted to enter into a contract with appellant, to work, in purely an advisory capacity, for the salary of $24,000 a year for ten years, and thereby make it impossible, within such period of time, for any future board of directors to repeal or revise such act, and render the shareholders, in their meetings, impotent to repeal or revise such act through the election of any board of directors. We are of the opinion, therefore, that the contract entered into with appellant is contrary to the public policy of this state in respect to the supervision of building and loan associations, and contrary to the Continental's policy in administering its affairs, as is clearly shown by its by-laws, and such contract is therefore void. The following authorities sustain this conclusion: Beers v. New York Life Ins. Co., 66 Hun, 75, 20 N.Y.S. 788; Carney v. New York Life Ins. Co., 162 N.Y. 453, 57 N.E. 78, 49 L.R.A. 471, 76 Am.St.Rep. 347; Denton Milling Co. v. Blewett (Tex.Civ.App.) 254 S.W. 236 (writ denied 114 Tex. 582, 278 S.W. 1114); Leak v. Halaby Galleries, Inc. (Tex.Civ.App.) 49 S.W.(2d) 858; Llewellyn v. Aberdeen Brewing Co., 65 Wash. 319, 118 P. 30, Ann.Cas.1913B, 667. The statutes that appear to be applicable are: Articles 852, 854, 856, 881a-10, 881a-13, 881a-32, 881a-56.

It necessarily follows that, in our opinion, appellant's second amended original petition states no cause of action, and that the trial court did not err in sustaining the general demurrer and the two special exceptions. The judgment of the lower court is affirmed.

Affirmed.