KOPPITZ-MELCHERS, INC., *v.* KOPPITZ.

1. Corporations—Officers—Stockholders—Boards of Directors.

A contract with defendant that he was to be president and general manager of plaintiff corporation for a period of 10 years, approved at a meeting of stockholders, was void insofar as it relates to his being president, as the general corporation act provides that an officer or agent may be removed by the board of directors whenever in their judgment the business interests of the corporation will be served thereby (Act No. 327, § 15, Pub. Acts 1931).

2. Limitation of Actions—Pleading.

The defense of statute of limitations is an affirmative defense which must be pleaded in defendant's answer (Court Rule No. 23, § 3 [1945]).

3. Corporations—Suit Against Promoter—Limitation of Actions —Directors.

Section of the general corporation act prescribing limitation of time for which directors may be held liable for any delinquency in the performance of duties prescribed by the act in action brought by the corporation, through or by a director, officer, or shareholder, does not apply to suit against former director, where he is not being sued as a director, but for a secret profit fraudulently obtained by him while a promoter before he became a director (Act No. 327, § 47, Pub. Acts 1931).

4. Same—Promoters—Fiduciaries.

A promoter is a person who undertakes to bring about the incorporation and organization of a corporation and establishes it as able to do business; he occupies a fiduciary relation towards the corporation, is a quasi agent of the corporation and subject to the disabilities of such.

5. Equity—Laches.

Laches is an affirmative defense.

6. SAME—LACHES—PLEADING—DISCOVERY OF FRAUD.

In suit for accounting and cancellation of a contract for hire the defense of laches cannot prevail where it was not pleaded and it appears that suit was brought within two years after discovery of the fraud upon which recovery was based.

7. JUDGMENT—RES JUDICATA—SUIT TO ENJOIN MEETING—CORPORATION'S SUIT AGAINST PROMOTER.

Previous action by six directors of corporation against defendant, a promoter and former director, and another person and the corporation to obtain an injunction against holding the annual meeting of the corporation, which action was adjusted and compromised, but which was not brought by plaintiffs in their capacity as directors, was not *res judicata* of instant suit by corporation against defendant for accounting for secret profit fraudulently obtained while he was a promoter and for cancellation of a contract for hire.

8. CORPORATIONS—ACTION AGAINST PROMOTER—PARTIES.

An action to recover illegal profits from a promoter of a corporation could not be brought by its stockholders without demanding that such an action be started by the corporation.

9. SAME—PROMOTER'S SECRET PROFIT—CANCELLATION OF STOCK.

In suit against former director and promoter for accounting, finding of the trial court that defendant had illegally received a secret profit *held*, sustained by competent testimony, hence cancellation of defendant's stock in such sum as he had taken therefor is affirmed.

10. SAME—ACCOUNTING BY PROMOTER—COMMISSIONS.

Where it is not shown in corporation's accounting suit against defendant promoter that he had received any part of commission from vendor for sale of real estate purchased for corporation, which commission had been paid to another person, who had assisted in the promotion and is now deceased, defendant may not be charged for the full amount of the commission received by deceased.

11. SAME—STOCKHOLDERS—CONTRACTS—OFFICERS.

The stockholders of a corporation do not have the power to enter into a contract with a person providing that he would be president of the corporation for a term of years (Act No. 327, § 15, Pub. Acts 1931).

12. SAME—REMOVAL OF OFFICERS AND EMPLOYEES—BOARD OF DI-
RECTORS.

The board of directors of a corporation may remove an officer
or employee for just cause (Act No. 327, § 15, Pub. Acts
1931).

13. SAME—GENERAL MANAGER OF BREWERY—CANCELLATION OF CON-
TRACT—FINDING OF COURT—EVIDENCE.

Finding that termination of defendant's contract with plaintiff
brewery corporation to function as its general manager was for
sufficient cause was sustained by competent evidence under rec-
ord showing that he had, as a promoter of the corporation,
failed to disclose to the corporation and securities commission
all of the facts concerning the organization of the corpora-
tion, and had obtained a secret profit during the promotion
and while acting as general manager had permitted payment
of rebates contrary to statute after the directors had ordered
discontinuance of such practice (Act No. 327, § 15, Pub. Acts
1931; Act No. 8, § 30, Pub. Acts 1933 [Ex. Sess.]).

14. SAME—PROMOTION SYNDICATE—SECRET PROFITS.

Where so-called syndicate members were actually promoters of
plaintiff corporation, the corporation was entitled to recover
secret profit defendant, one of the promoters, had received
incident to promotion of the organization, rather than the
syndicate.

15. COSTS—ACCOUNTING—MODIFICATION OF DECREE.

No costs are allowed on defendant's appeal in corporation's suit
against former promoter, president and general manager for
accounting and cancellation of contract for hire where there
is a substantial modification of the decree in defendant's
favor.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted June 6, 1946. (Docket No. 2, Calendar No.
43,187.) Decided September 12, 1946.

Bill by Koppitz-Melchers, Inc., a Michigan cor-
poration, against Benjamin A. Koppitz for account-
ing, to void a contract, and to cancel certificate of
stock. Cross-bill by defendant against plaintiff to
require payments to be made under contract. De-
cree for plaintiff. Defendant appeals. Modified
and affirmed.

*John P. O'Hara (John F. Wagner, E. M. Branigin* and *John P. O'Hara, Jr.,* of counsel), for plaintiff.

*David I. Hubar (Milton M. Maddin,* of counsel), for appellant.

SHARPE, J. This is a suit for an accounting and the cancellation of a contract for hire.

Prior to the era of prohibition the Koppitz-Melchers, Inc., operated a brewery in the city of Detroit, but at the effective date of prohibition the company discontinued operations and dismantled its plant. In the year of 1932 it became apparent that the operation of breweries would again be permitted.

Defendant, Benjamin A. Koppitz, having been identified with the manufacture of beer and associated products desired to return to those activities. He contacted Mr. Goettman and a number of former employees of the old Koppitz-Melchers, Inc., with a view of organizing a new Koppitz-Melchers, Inc., and resuming the manufacture of beer. From the year 1932 until the present corporation was organized in December, 1934, defendant spent considerable time and some money in an effort to obtain a license for a new brewery. During this time Koppitz contacted Leo Kuhn and arranged with him to handle all legal matters in connection with the enterprise. Potential land sites were examined. An option was obtained by Leo Kuhn of a site at Dubois and the Detroit river which the Detroit Trust Company had for sale for the sum of $69,955. The necessary funds to acquire the property were not raised by Koppitz, Goettman and Kuhn within the time limit of the option.

In order to preserve the name Koppitz-Melchers, a corporation was formed in 1932 with a nominal paid-in capital of $1,000, which corporation was maintained until the present corporation was organ-

ized in December, 1934. Mr. J. Arthur Hoffman, formerly a member of the Detroit Planning Commission, became interested in the venture and in his capacity as real estate broker, acting for Mr. McNulty, opened negotiations with the Detroit Trust Company towards obtaining a new option on the real estate hereinbefore mentioned.

An option was obtained on this property for the sum of $62,000. On November 10, 1934, the Detroit Trust Company deeded this property to Mr. McNulty. Later, Mr. McNulty agreed to sell the property to the syndicate for the sum of $76,000 in the following manner: $51,000 in cash and the assumption of a mortgage by the syndicate of $25,000. The assessed valuation of the property was $109,000? The syndicate, headed by Mr. Koppitz, was able to raise the sum of $55,000 and completed the purchase of the property from Mr. McNulty.

The syndicate members believed that they were entitled to a larger interest in the corporation to be formed than the stockholders subsequently acquiring stock. The syndicate conceived the plan that each syndicate member should receive two shares of $1 common stock of the new corporation for each dollar that had been invested in the syndicate. This was to be accomplished through the syndicate turning in the land which it had purchased to the new corporation for $110,000 or double the amount of cash that had been paid by the syndicate for it. The present corporation was organized December 1, 1934. The original articles of incorporation provided for an authorized capital of $1,000,000 reflected through 1,000,000 shares of common stock at a par value of $1 per share. Title to the real estate was transferred to the corporation on the basis of the issuance by the corporation of its common capital stock to syndicate members

to the extent of $110,000. An application was then made to the Michigan corporation and securities commission for authority to sell 690,000 shares of the stock to residents of the State of Michigan. Hearings were had before the commission and an order was entered directing the original syndicate members to surrender 50 per cent. of their bonus stock, whereupon 27,500 shares were surrendered to the corporation. The original syndicate members were authorized to receive one and one-half shares of stock for every dollar invested in the syndicate, however, 27,500 of these shares were deposited with the commission in escrow.

The first board of directors and officers of the plaintiff company were as follows: Benjamin A. Koppitz, president and general manager; Ferdinand P. Goettman, vice-president and general sales manager; J. Arthur Hoffman, secretary-treasurer; Earl A. Graef, assistant secretary; George W. Auch, assistant treasurer; and Leo W. Kuhn.

By the year 1936 the brewery had been erected, equipped and ready for occupation. At a meeting of stockholders held on January 20, 1936, a resolution was presented proposing that a 10-year contract be entered into with Koppitz and Goettman whereby Koppitz would be president and general manager and Goettman would be vice-president and assistant general manager. The resolution was adopted.

After the brewery got into production, it experienced some difficulty in sales of its products. In order to enhance its sales, it entered into the practice of giving rebates contrary to the regulations of the Michigan liquor control commission. In the fall of 1941, the Michigan liquor control commission filed a complaint against the brewery with the result that the brewery was fined $250. Upon the discontinuance of the rebate practice the business of

the brewery declined. In January of 1941, Mr. Graef was engaged in conducting an independent investigation to ascertain the circumstances of the purchase of the property of the company. Out of this investigation he learned that there had been a $14,000 profit by Mr. McNulty out of the real estate transaction and that Mr. Hoffman had received $2,500 real estate commission from the Detroit Trust Company in his capacity as real estate broker. On August 4, 1942, the board of directors of the corporation sent Mr. Koppitz a notice to the effect that he was discharged as general manager of the corporation. Thereafter, Mr. Koppitz resigned as a director of the corporation. He refused to acquiesce in the termination of his contract. After plaintiff's suit was started, Mr. Koppitz filed a cross-bill in which he seeks specific performance of his contract or in the alternative damages for its breach.

The cause came on for trial and the trial court made the following finding of facts:

"Of the $14,000 of stock which was thus issued, based upon the misapprehension of the securities commission, defendant Koppitz received $5,000. It is my conclusion as a matter of fact and law that Mr. Koppitz, and Mr. Hoffman who is also now deceased, intended to and did secure $14,000 of the stock of the corporation without paying therefor, and that this result was attained by the misrepresentation made to the securities commission. I further find that it was represented to all subsequent, subscribing stockholders of the company that the actual good-faith purchase price of the property to the corporation was $76,000, $51,000 in cash and $25,000 by way of mortgage. This is the basis upon which the books of the corporation are set up. There is nothing in the case to indicate that either of these parties ever revealed willingly to the corporation or to any stockholder therein the facts in regard to the land trans-

action. Arthur Hoffman continued to be a director of the corporation until 1941, and when these facts were brought to his attention, he declined to become a candidate for reelection to the board. At that time he withdrew from any connection with the company. * * *

"Under the evidence, Mr. Koppitz has $5,000 of stock in the corporation which may be treated as having been issued upon this transaction. The decree to be rendered in the case may provide for the cancellation of $5,000 par value of stock now standing in the name of defendant Benjamin Koppitz."

The contract between the corporation and Koppitz provided that Koppitz was to be president and general manager of the corporation for a period of 10 years. This contract was approved February 8, 1937, at a meeting of stockholders. It is conceded that the contract insofar as it relates to Koppitz being president of the corporation for a period of 10 years is invalid.

The trial court cited Act No. 327, § 15, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-15, Stat. Ann. § 21.15), which says in part: "Any officer or agent may be removed by the board of directors whenever in their judgment the business interests of the corporation will be served thereby." He made the following finding of facts:

"This express provision of the statute places the subject of the removal of officers directly in the hands of the boards of directors of Michigan corporations. It takes it out of the power even of stockholders' meetings to abrogate that power of removal. The exercise of that power of removal is an act connected with the internal management of corporate affairs, and it is expressly placed by the statute within the discretion of the board of directors. Such an exercise of discretion will not be interfered with by the courts unless it clearly

appears that the discretion is not honestly and fairly exercised, and that it is based upon fraud on the part of the directors. There is no such showing in this case.

"The burden here rests upon the defendant to affirmatively establish that his removal by the directors was the result of fraud and bad faith on their part. There is no testimony in the case which has any tendency to support any such conclusion.

"On the contrary, the testimony establishes affirmatively that even if the removal had to be based upon cause, good cause existed therefor. This good cause consisted of the fraud practiced upon the corporation and upon the securities commission by the defendant, as a promoter of the corporation, and upon the course of conduct pursued by him as president, in which he approved the giving of rebates, contrary to the penal statute* of the State of Michigan. These two things constitute perfectly good cause for removal, if the removal must be based upon cause."

On the question of the $2,500 commission paid by the Detroit Trust Company to J. Arthur Hoffman, the trial court made the following finding of facts:

"4th. The testimony clearly establishes a joint adventure in the promotion of this corporation between the defendant corporation and Arthur Hoffman, now deceased. Arthur Hoffman, while negotiating the purchase of this land in the devious manner above indicated was ostensibly representing the corporation to be formed. He later became a director, and therefore was in identically the position with regard to the corporation that this defendant was. While so representing the corporation, he sought and received from the Detroit Trust Company a real estate commission on the sale of the

* See Act No. 8, § 30, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1940, § 9209–45, Stat. Ann. § 18.1001).—REPORTER.

property of $2,500. Neither he nor the defendant revealed the existence of this commission to the corporation. This was unjust enrichment gained by him out of his representation of the corporation to be formed. It was his duty to reveal that commission and to give the corporation the benefit of it, or at least give the corporation an opportunity to claim that benefit or to allow him to retain the commission, as it saw fit.

"This defendant, under the quotation just made, was a coconspirator with Hoffman and is personally equally liable with Hoffman for all of the latter's unjust enrichment. The decree to be rendered therefore will provide that the contract cancellation which took place on the 3d of August, 1942, after the discovery by the board of directors of the continuance of rebates, was proper, and will further provide that the defendant Koppitz is liable to account to the corporation for the sum of $2,500, with interest from the date when Arthur Hoffman received it as a real estate commission in 1934."

The opinion of the trial court summarized his findings in the following manner:

"The decree in the case will provide, first, for the cancellation of $5,000 par value of stock in the hands of the defendant; second, that he account for unjust enrichment in the sum of $2,500 which accrued to his associate, Arthur Hoffman, in the land deal; third, that the cancellation of the contract of 1937 voted by the board of directors on August 3, 1942, was a valid and proper act. Plaintiff to recover costs to be taxed."

Defendant appeals and urges that the action for the recovery of the secret real estate deal profit is barred by the limitations contained in section 47 of the general corporation act (Act No. 327, § 47, Pub. Acts 1931, as amended by Act No. 160, Pub. Acts

1943, Comp. Laws Supp. 1945, § 10135–47, Stat. Ann. 1945 Cum. Supp. § 21.47) which provides:

"Action may be brought by the corporation, through or by a director, officer or shareholder * * * against 1 or more of the delinquent directors, officers or agents, for the violation of, or failure to perform, the duties above prescribed or any duties prescribed by this act, whereby the corporation has been or will be injured or damaged, or its property lost, or wasted, or transferred to 1 or more of them. * * * No director or directors shall be held liable for any delinquency under this section after 6 years from the date of such delinquency, or after 2 years from the time when such delinquency is discovered by one complaining thereof, whichever shall sooner occur."

Defendant also urges that plaintiff cannot recover upon its bill of complaint because the undisputed facts disclose no actionable wrongdoing on the part of the defendant; that if fraud was perpetrated, it was perpetrated on the original syndicate and not upon plaintiff company; and that the institution of a previous action based upon the same claims and issues here involved and which previous action was fully settled and an order entered dismissing said cause with prejudice precludes the maintenance of this action.

In our discussion of the claims made by defendant, we are in accord with the finding of fact made by the trial court that a secret profit of $14,000 was made on the real estate deal of which defendant received $5,000. The profit made on this deal took place in 1934 and became known to some of the officers of the corporation in 1940 or 1941. We note that the defense of the general statute of limitations was not pleaded by defendant in his answer or amended answer.

Court Rule No. 23, § 3 (1945) reads:

"The facts constituting any affirmative defense, such as payment, release, satisfaction, discharge, license, fraud, duress, estoppel, statute of frauds, statute of limitations, illegality, that an instrument or transaction is either void or voidable in point of law, or cannot be recovered upon by reason of any statute or by reason of nondelivery, want or failure of consideration in whole or in part, and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the plaintiff's declaration or bill of complaint, in whole or in part, and any ground of defense which, if not raised on the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the defendant's answer."

See, also, *Swan* v. *Gregory,* 195 Mich. 457; *In re Mayer's Estate,* 210 Mich. 188 (10 A. L. R. 773); and *Hewett Grocery Co.* v. *Biddle Purchasing Co.,* 289 Mich. 225.

Nor do we think that section 47 of the general corporation act applies to the facts in this case. The above section is designed to control suits by directors in the name of the corporation against delinquent directors. Moreover, the present suit is by the corporation against a promoter who committed fraud before he became a director. Defendant was a director, but is not being sued as such.

In 13 Am. Jur. p. 243, § 98, it is said:

"A promoter is a person who undertakes to bring about the incorporation and organization of a corporation, procures for it the rights and capital by which it is to carry out the purposes set forth in its charter and establishes it as able to do business. He brings together the persons interested in the enterprise, aids in procuring subscriptions, and sets in motion the machinery which leads to the forma-

tion itself. Every person acting by whatever name in the forming and establishing of a company at any period prior to the company's becoming fully incorporated is considered in law as occupying a fiduciary relation towards the corporation. He is a quasi agent of the corporation and is subject to the disabilities of such."

The defense of laches cannot prevail. It is an affirmative defense. It was not pleaded. Moreover, the fraud was discovered in late 1940 or early in 1941. Suit was begun in August, 1942, within two years after discovery of the fraud.

It is urged by defendant that a previous action based upon the same claims and issues here involved, which cause was adjusted and compromised, precludes the maintenance of the present action. It appears that in June, 1942, six directors of the corporation commenced a suit against Koppitz, John A. Boreland and the corporation. The purpose of the suit was to obtain an injunction against holding the annual meeting of the corporation. A temporary injunction restraining the holding of the meeting was granted. Negotiations were entered into for the purpose of adjusting the litigation. Several conferences were held between the parties, as a result of which the claims of the parties were adjusted, settled and compromised. The settlement related to the pooling of proxies for the election of directors; the modification of the Koppitz-Goettman contract; the employment of a brewmaster; and provided that all other matters in controversy were to be left to the determination of the new board of directors. It is to be noted that the suit was not brought by plaintiffs in their capacity as directors. An action to recover illegal profits could not be brought by the plaintiffs, as stockholders, without first demanding that such an

action be started by the corporation. The purpose of the suit was not to adjust any claims of the corporation as against Koppitz and is not *res judicata* of the issues involved in the present suit.

There is competent testimony to sustain the finding of the trial court that defendant Koppitz illegally received $5,000 as a secret profit. That part of the decree canceling 5,000 shares par value of defendant's stock is affirmed.

The decree of the trial court also provided that defendant Koppitz account for unjust enrichment in the sum of $2,500 which accrued to his associate Arthur Hoffman in the land deal. The record shows that this sum was paid by the Detroit Trust Company to Arthur Hoffman November 15, 1934, as a real estate commission upon the sale of the real estate to McNulty. There is no testimony that Koppitz received any part of it from Hoffman. In our determination of this matter we do not pass upon the question of whether the corporation has any claim against the estate of Arthur Hoffman for such commission. The Detroit Trust Company had a right to pay this commission to any real estate broker who would sell the property. In the absence of any showing that Koppitz participated in the commission, we are constrained to hold that the trial court was in error in charging him for the full amount of the commission received by Hoffman.

It is next urged that the board of directors did not act in good faith in terminating defendant's contract of employment. The contract with Koppitz was first authorized at a stockholder's meeting in 1936 by resolution. It was for a period of 10 years. It was approved February 8, 1937, at a stockholders meeting. Defendant was discharged August 3, 1942. In our opinion the stockholders had the authority to approve a contract with Koppitz for a period of

10 years, in so far as it related to services to be performed for the corporation. They did not have the power to enter into a contract with Koppitz providing that he would be the president of the corporation during this 10-year period. It is also the law of this State that the board of directors of a corporation may remove an officer or employee for just cause. The trial court found that good cause existed for the cancellation of the contract. There is evidence of the fact that Koppitz as general manager had permitted the payments of rebates after the directors had ordered such practice discontinued; and that Koppitz as a promoter failed to disclose to the securities commission all of the facts concerning the organization of the corporation. While the failure of defendant to disclose material facts to the securities commission occurred prior to the execution of the contract of employment and was not known by the board of directors at the time the contract was entered into, yet such actions on the part of defendant could be considered by the board of directors in determining the fitness of defendant to act as its general manager.

Under section 15 of the general corporation act, *supra,* a board of directors may remove an officer or agent whenever the business interests of the corporation will be served thereby. Under the above section of the statute the board of directors for sufficient cause could terminate defendant's contract. The trial court found that there was sufficient cause for the termination of the contract. There is competent evidence to sustain the finding of the trial court and the decree terminating such contract is affirmed.

It is urged by defendant that if any recovery be had against the defendant, such recovery would belong to the syndicate members and not to the corporation. In our discussion of the problems of

this case, we have used the term "syndicate." In the case at bar the so-called syndicate members were actually promoters.

In *American Forging & Socket Co.* v. *Wiley,* 206 Mich. 664, we adopted reasoning of *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159 (89 N. E. 193, 40 L. R. A. [N. S.] 314), where it was said:

"The word 'promoter' has no precise and inflexible meaning in this country.   *   *   *

"In a comprehensive sense 'promoter' includes those who undertake to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business.  Their work may begin long before the organization of the corporation, in seeking the opening for a venture and projecting a plan for its development, and may continue after the incorporation by attracting the investment of capital in its securities and providing it with the commercial breath of life.  It is now established without exception that a promoter stands in a fiduciary relation to the corporation in which he is interested, and that he is charged with all the duties of good faith which attach to other trusts.  In this respect he is held to the high standards which bind directors and other persons occupying fiduciary relations."

Recovery in the instant case is for the corporation and not the so-called syndicate.  A decree will be entered in this court in accordance with this opinion. No costs.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, and NORTH, JJ., concurred.  STARR, J., took no part in the decision of this case.