## OWENS v. WILSON et al.

No. 18860.   Opinion Filed Jan. 8, 1929.

A. M. Beets, Walter Marlin, E. S. Bessey, and O. K. Wetzel, for plaintiff in error.

Waldrep & Jones, for defendants in error.

BRANSON, C. J.  This cause originated in the district court of Cleveland county.  J. A. Owens was the plaintiff, and is the plaintiff in error here.  J. W. Wilson, John Hall, J. L. Mayes, S. V. Wingamer, Otto Capler, F. O. Harris, and Mrs. S. A. Turnbull were the defendants, and they are the defendants in error here.  Plaintiff submitted his cause of action on an amended petition, to which the defendants filed a demurrer.  The demurrer was sustained, and plaintiff seeks a reversal.

The amended petition pleads a contract, headed "Contract for Test Well and Leases," and that same was signed by J. W. Wilson and John Hall, February 3, 1926, and that later, on dates unknown to plaintiff, the other of said named defendants signed; that thereby the defendants bound themselves "relative to the blocking of certain acreage for the purpose of drilling a test well for oil and gas on some part thereof, and for the drilling of such test well, and that by the terms of said contract the defendants and each of them agreed in writing for a good and valuable consideration to make, execute, and deliver to the plaintiff an oil and gas lease on the tracts and parcels of land set opposite the several names of said defendants * * * and that the plaintiff agreed to begin, within time provided in said contract, a test well for oil and gas * * * on or before six months after the date all new leases and all releases of old or existing leases were placed in the Security National Bank of Norman, Okla., in escrow."

Plaintiff further pleads that on the 18th day of May, 1926, the plaintiff informed the defendants that sufficient acreage had been blocked up to warrant the drilling of a well, and agreed that on delivery of the leases a well would be drilled within six months from said date; and that he, the plaintiff, has at all times since the execution of said contract been ready, able, and willing to drill the well and carry out his contract, but that the defendants have refused to execute the leases or to place the same in escrow in the Security National Bank of Norman. Omitting the other allegations not deemed pertinent, plaintiff prays—

"Judgment against the defendants and each of them, and that they be required to perform the conditions as set out in the said contract, and that they be required to execute leases as provided in said contract, on the premises as owned by the defendants, and as set out therein."

The contract which is made the basis of the action for specific performance is very lengthy, and we do not deem it necessary to quote it in full.

The plaintiff elected to stand on the said amended petition, and judgment was entered that plaintiff take nothing by his action.  The only assignment made by plaintiff in error is that the court erred in sustaining the demurrer, and to support the same he cites these cases:  Clark v. Sloan, 117 Okla. 303, 246 Pac. 425; Humphrey v. Taylor, 106 Okla. 38, 233 Pac. 180; Okmulgee Producing & Refining Co. v. Ball, 111 Okla. 203, 239 Pac. 900.

It appears that the demurrer to the petition was sustained by the trial court for that the contract was insufficient in many particulars to justify the relief.  We will not undertake to discuss all of its alleged defects, but only wherein the contract was devoid of mutuality, and indefinite and uncertain to such an extent as to make specific performance not warranted in equity.

It is the position of the defendants that the writing pleaded bound the plaintiff to perform no act, and therefore the defendants could not be compelled to perform. The indefiniteness and lack of mutuality in the

contract is disclosed by referring to certain paragraphs thereof—

"That said test well should be commenced on or before six months after the date all new leases and all releases of old or existing leases were placed in the Security National Bank of Norman, Okla., in escrow."

Again, it is provided:

"That in the event a sufficient amount of acreage could not be blocked up under said agreement for leases to warrant the plaintiff to make the test well, that the contract should not be binding on any signer thereto."

Again, there is a provision as to the landowner to the effect that—

"Agrees to make, execute, and deliver a lease for oil and gas, same to cover and describe the land owned and set out following said owner's name, the said lease to be made on the usual form known as Producer's Form No. 88, and to have substantially the following provisions to wit: 'Lease for oil and gas, to be executed by the owner, providing for a royalty of one-eighth of the oil, and for $200 for a gas well or for one-eighth of product of the said gas well, and to provide for one-eighth of the product of any and all casinghead gasoline that may be sold from said lease, lease to provide for well to be commenced within one year and 4 months from the date of said lease, and in the event that no well is begun, to pay the landowner $1 per acre rental'," etc.

Again, we find therein:

"That the test well shall be commenced on or before six months after the date all new leases and all releases of old or existing leases are in the escrow bank, and all abstracts brought down to date, unless such time be extended by written consent of the landowner."

Again, it provides:

"It is stipulated by the second party, and understood that in event a sufficient amount of acreage cannot be blocked up under this agreement for leases to warrant the second party to make the test well, then in that event this contract shall not be binding on any signer thereto. * * *"

Defendants say in their brief that the clauses above set forth made the contract unenforceable, by reason of the plaintiff having the right at any time to decide whether or not he would drill, or whether or not a sufficient amount of acreage had been acquired. It is left entirely to his option and to his own statement whether a sufficient amount of acreage had been blocked to justify him in proceeding.

Many cases are cited, and the rule seems to be universal, that where contracts or purported agreements include clauses of this nature, they are entirely unenforceable. One individual may not retain to himself the option of exercising his opinion in a matter, and at the same time claim an enforceable agreement with the other side. The right to perform must be mutual, and the right to enforce must likewise be mutual. If these conditions do not exist in the contract, then it cannot be enforced.

The defendants cite the case of Davis v. Riddle (Colo. App.) 136 Pac. 55. In the case of Melton et al. v. Cherokee Oil & Gas Co., 67 Okla. 247, 170 Pac. 691, this court said:

"A court of equity will not award relief in the nature of specific performance of a contract which is not certain, fair, and just, or where performance by the complaining party is entirely optional."

And in the same case, further said:

"By reason of the provisions of the commercial lease under consideration, there was no obligation upon the plaintiff either to drill or pay rental, but the doing of either was entirely optional with it, and that as the provisions of the lease gave the lessee the right to surrender it at any time without further obligation on its part, a corresponding right existed on the part of the lessor to compel a surrender."

It must be noted particularly that the lease expressly provides that the plaintiff retains the option and discretion to determine whether or not sufficient acreage had been secured.

In the case of Grow v. Davis (Kan.) 203 Pac. 683, the Supreme Court of Kansas had before it a contract in intendment all but identical with the one here. That court said:

"An instrument in form a contract provided that the first party should execute an oil and gas lease and deposit it in a bank for delivery to the second party, when the second party should begin drilling a well in a specified locality. The second party agreed to begin drilling the well; but the instrument provided that if he did not begin drilling within a stated time, the contract and lease should be of no effect. Held, the instrument when signed did not create an enforceable obligation, and the first party could withdraw at any time before the second party commenced to drill."

It must be noted again that the contract in the instant case is further devoid of mutuality, for that the defendants could not recover upon the breach of contract against Owens for refusal to drill the alleged well, for the contract itself left the matter en-

tirely in his discretion. At his own whim and caprice, he might declare what acreage was sufficient to justify the drilling of a well.

In order for a court of equity to grant specific performance of a contract as here sought, the contract must be definite and certain as to the terms and provisions, for the court cannot assume the prerogative of making a contract for the parties. In this connection, it must be noted that the six months on or before the expiration of which the test well was to be commenced is conditioned that it shall run after the date all new leases and all releases of old or existing leases are in the escrow bank, and all abstracts brought down to date. Many of these matters were left entirely to the plaintiff. There is nothing in the contract to determine when the six months period should begin to run. These provisions left the matter entirely at the discretion of the plaintiff, to do as he saw fit. Such a contract, so uncertain and indefinite, is not one which a court of equity will specifically enforce. Hill Oil & Gas Co. v. White, 53 Okla. 748, 157 Pac. 710.

It must also be noted in the oil and gas royalty provision, these words are found:

"Lease for oil and gas to be executed by the owner, providing for a royalty of one-eighth of the oil, and for $200 for gas well, or for one-eighth of the product of the said gas well. * * *"

An oil and gas lease is a contract. Here, we have a contract to make a contract in the nature of an oil and gas lease, and before specific performance will be predicated thereon, the terms of the contract must be so definite and certain that there can be no misunderstanding between the parties, and nothing to be left for subsequent agreement. This rule is specifically set forth in 6 R. C. L., page 617, as follows:

"To be enforceable, a contract to enter into a future contract must specify all of its material and essential terms, and leave none to be agreed upon as the result of future negotiations."

This is applicable to a contract for the execution of an oil and gas lease. Mills & Willingham on Law of Oil and Gas, pages 216-17, announces the rule to this effect:

"An agreement to make a contract in the future is of course no contract at all, because the minds of the parties have not met upon the terms. So a contract to execute a lease in the future cannot be specifically enforced, unless the terms of the lease are specifically set out, nor will the courts decree specific performance, if the terms of the lease are unconscionable." Peer v. Hughes (Ariz.) 213 Pac. 691; 1 Elliott on Contracts; Shepherd v. Carpenter, 54 Minn. 153; Sibley v. Felton, 156 Mass. 273, 31 N. E. 10; Dillingham v. Dahlgren (Cal. App.) 198 Pac. 832.

The judgment of the trial court is affirmed.

MASON, V. C. J., and HARRISON, LESTER, CLARK, and RILEY, JJ., concur.

Note.—See "Specific Performance," 36 Cyc. p. 587, n. 75; p. 621, n. 9.