## SOHIO PETROLEUM CO. et al. v. BRANNAN.

No. 33997. May 22, 1951.

Rehearing Denied July 3, 1951.

Second Petition for Rehearing Denied Sept. 11, 1951.

*235 P. 2d 279.*

Hervey, May & Owens, Oklahoma City, for plaintiffs in error.

J. Woody Dixon, Marietta, H. A. Ledbetter, Ardmore, and Looney, Watts, Ross, Looney & Smith, Oklahoma City, for defendant in error.

HALLEY, J. R. Brannan instituted this action in the district court of Love county against Sohio Petroleum Company, Thomas E. Nix, and Guy G. Jameson, seeking specific performance of an oral agreement made on August 2, 1945, whereby he agreed to sell and convey and defendants agreed to purchase a certain oil and gas lease dated August 26, 1944, covering lands in Murray county, Oklahoma. We shall refer to the parties by name, or as "plaintiff" and "defendants", as they appeared in the trial court.

It was alleged that Sohio Petroleum Company authorized Thomas E. Nix, a lease broker, to secure an oil and gas lease on the land of the plaintiff. Mr. Nix employed Guy G. Jameson, also a broker, to make the purchase

at an agreed price of $100 per acre, or a total of $16,520, plus $41,300 out of 1/16th of 7/8ths of oil and gas, if and when produced. Under the oral agreement made on August 2, 1945, between the plaintiff R. Brannan and Guy G. Jameson, Mr. Brannan agreed to draw a sight draft for $16,520 on Thomas E. Nix in care of the First National Bank & Trust Company of Oklahoma City and attach to the draft an assignment of the lease to Guy G. Jameson. R. Brannan agreed to furnish a complete abstract of title for examination, and Thomas E. Nix agreed to deliver the abstract and all title papers to Sohio Petroleum Company for examination, and upon title being found merchantable draft was to be paid and assignment delivered to Sohio Petroleum Company.

R. Brannan alleges that he complied fully with the above oral agreement by delivering complete abstract of title, and that he met all of the title requirements promptly. The original opinion of the attorneys for Sohio contained some fifteen requirements. On September 29, 1945, a supplemental opinion was written, and the plaintiff claims that he met all of the requirements in these opinions and that the title was made merchantable, but that if not entirely merchantable, he stood ready, able and willing to make it so.

Plaintiff admits in his pleadings that he was to furnish a merchantable title, but there was no agreement as to whether or not the opinion of the attorneys for Sohio was to be final upon merchantability of title. No time was specified in the oral agreement as to when title should be made merchantable.

Defendants raised the defense of the statute of frauds by general demurrer, which was overruled. Plaintiff contends that the doctrine of equitable estoppel is applicable under the facts proven, and that the acts of the defendants were such as to justify the applicability of this doctrine. A well was being drilled near the land in question by Continental Oil Company, and the value of leases in the vicinity was high until unfavorable reports were received as to the drilling well, because the oil produced was of an extremely low gravity. Plaintiff claims that Sohio Petroleum Company probably delayed the acceptance of or rejection of title pending the outcome of the drilling well, and only rejected title as unmerchantable when the well proved to be unprofitable, and now seeks to escape liability behind the statute of frauds.

It is not disputed that Sohio gave only verbal authority to Mr. Nix to secure a lease on plaintiff's land, and that Mr. Nix gave only verbal authority to Guy G. Jameson to contact plaintiff and purchase the lease. The agreement was made on August 2, 1945, between Mr. Jameson and the plaintiff, and was entirely oral. The agreement was definite as to the land to be covered and the price to be paid for the lease. No definite time for consummation of the deal was agreed on, and under the well established rule, time was admittedly not of the essence of the contract.

The first writing in furtherance of the oral agreement of August 2, 1945, was the ten-day sight draft drawn on that date by R. Brannan on Thomas E. Nix for the agreed purchase price of $16,520, and forwarded to the First National Bank & Trust Company of Oklahoma City. On the same date, R. Brannan executed and atttached to the draft an assignment of the oil and gas lease dated August 26, 1944, executed by himself and his wife as lessors for a term of ten years, and naming W. R. Brannan, his son, as lessee. This lease already had been recorded in Murray county. The assignment recites a consideration of one dollar and other good and valuable considerations, and reserves to assignor $41,300, payable out of 1/16th of 7/8ths of the oil and gas produced. The next day, the plaintiff delivered an abstract of title to Mr. Jameson, who advised plaintiff shortly thereafter that since W. R.

Brannan was the lessee in the lease to be assigned, it would be necessary to have him execute an assignment of the lease. W. R. Brannan was then in the South Pacific. R. Brannan did have a limited power of attorney from W. R. Brannan, but it did not authorize the assignment of an oil and gas lease covering land in Murray county. Later, an assignment from W. R. Brannan was secured, but it never was delivered to the attorneys who examined the title for Sohio Petroleum Company; and it contained a defective acknowledgment, which made it of doubtful validity.

On September 29, 1945, the attorneys for Sohio submitted a supplemental opinion waiving certain requirements but requiring that others be met, and also suggesting that since it now appeared that R. Brannan had sold the land in question and reserved one-half of the mineral rights, the other one-half being vested in W. E. Crump, and the assignment by R. Brannan being made for W. R. Brannan by R. Brannan, attorney in fact, a new oil and gas lease should be obtained from R. Brannan and W. E. Crump. This requirement was never met.

On October 24, 1945, the examining attorney for Sohio wrote a final opinion rejecting the title, principally upon the ground that each of the three assignments of the lease submitted contained reservations of $41,300 from the working interest of oil and gas produced, making them overlapping, and the fact that the power of attorney from W. R. Brannan to R. Brannan did not authorize assignment of oil and gas leases on land in Murray county. On November 3, 1945, Sohio returned all title papers to Thomas E. Nix, rejecting the title as unmerchantable,

The record discloses that upon the expiration of the ten days provided in the sight draft above mentioned, R. Brannan, through his bank in Marietta, advised the First National Bank & Trust Company of Oklahoma City that it should hold the draft and attached statement, subject to his recall.

Judgment was entered for the plaintiff on September 29, 1948, granting him specific performance of the contract sued upon and ordering him to execute and deliver to the defendant Sohio Petroleum Company an assignment of the oil and gas lease dated October 26, 1944, above described, and declaring that upon delivery of said assignment the plaintiff should have judgment against the three defendants in the sum of $16,520 plus accrued interest and costs. Defendants have appealed from this judgment, and submit three propositions:

It is first contended that an oral contract to convey an oil and gas lease is invalid and unenforceable under the statute of frauds. Such a contract is invalid unless "some note or memorandum thereof be in writing and subscribed by the party to be charged, or his agent," whose authority must be in writing and subscribed "by the party sought to be charged."

The above provisions have been held by this court to be applicable to a verbal contract for the sale of an oil and gas lease for a term of years. Woodworth v. Franklin, 85 Okla. 27, 204 P. 452, 27 A.L.R. 590. This court has often held that the phrase "party to be charged", as used in our statutes, means "the party against whom a contract is sought to be enforced" (Davis v. Holman, 163 Okla. 59, 20 P. 2d 575), and may apply to either the vendor or the vendee.

It is next contended that equity will not decree specific performance of a unilateral contract, or a contract indefinite and uncertain in its terms. In Owens v. Wilson, 135 Okla. 38, 273 P. 895, it was said:

"Many cases are cited, and the rule seems to be universal, that where contracts or purported agreements include clauses of this nature, they are entirely unenforceable. One individual may not retain to himself the option of exer-

cising his opinion in a matter, and at the same time claim an enforceable agreement with the other side. The right to perform must be mutual, and the right to enforce must likewise be mutual. If these conditions do not exist in the contract, then it cannot be enforced."

In Lima Oil & Gas Co. v. Prichard, 92 Okla. 113, 218 P. 863, the rule is announced in the third syllabus as follows:

"When a contract is optional as to one party, so that a decree would be ineffectual in compelling performance by the optionee, this court will not render a judgment which, in effect, would be a decree for specific performance in behalf of the party not bound."

At the expiration of the ten-day draft period, plaintiff directed the bank to hold draft and assignment, subject to his recall. This made the extension of time optional with plaintiff, and his offer subject to withdrawal at any time he might wish to withdraw it.

The general rule relative to specific performance of incomplete contracts is announced in 58 C.J., Specific Performance, page 930, as follows:

"To warrant a decree of specific performance thereof, a contract must be definite and certain, and free from doubt, vagueness, and ambiguity, in its essential requirements and material terms. Clearness is required. The terms of the contract must be so clear, definite, certain and precise, and free from obscurity or self-contradiction, that neither party can reasonably misunderstand them, and the court can understand and interpret them without supplying anything or supplanting vague and indefinite terms by clear and definite ones through forced or strained construction. A greater degree of certainty is required in a suit in equity for specific performance, than in an action at law for damages. . . ."

It is also claimed by defendants that the evidence in the record shows that plaintiff failed to comply with the oral agreement as to furnishing merchantable title to the oil and gas lease involved. There is a conflict in the evidence as to whether the admitted oral agreement provided that the vendor furnish a merchantable title only, or a title subject to the opinion of the attorneys for Sohio Petroleum Company as to its merchantability. Defendants claim that the plaintiff furnished neither a merchantable title nor one that met the approval of the examining attorneys. In our opinion, the title furnished was not strictly merchantable. Approximately three months elapsed between the delivery of the abstract to the defendants and their rejection of the title. We do not believe that the record warrants the assumption, as suggested by defendants, that the oral agreement provided that the title was subject to the opinion of the attorneys for Sohio as to its merchantability.

There was no evidence in the record indicating that the title examiner was not competent, or that he made objections under undue influence, or that he was prompted by any ulterior motive. Even if all of the original requirements had been met, it is entirely possible that some of the curative instruments secured to meet the original requirements raised new questions and cast a cloud upon the title. The efforts of the plaintiff to meet Sohio's requirements show clearly that he must have understood that a merchantable title was a condition of the sale.

The parties here sought to be charged are the defendants. What notes or memoranda in writing did they sign? In what capacity were they acting? If as agents, were they authorized in writing so to act? The correct answers to these questions should go far in determining the issues raised on this appeal, provided the writings signed by the defendants were together sufficient to constitute a contract of such certainty and completeness as to take it from under the statute of frauds.

The only remaining question will be as to whether or not the partial performance by plaintiff would render it inequitable to refuse specific perform-

ance. All of the foregoing questions will be answered in succeeding paragraphs.

It is admitted that Sohio gave Mr. Nix authority to secure the oil and gas lease in question. However, it gave him no authority in writing—merely a map and some verbal instructions. Mr. Nix dealt in the same manner with Mr. Jameson. Both of them were independent lease brokers, and not employees of Sohio, and had no authority in writing to act for Sohio. The plaintiff executed an assignment to Mr. Jameson and drew a draft upon Thomas E. Nix. Not until November 3, 1945, do we find in the record any writing by Sohio Petroleum Company. On that date, Sohio wrote a letter to Mr. Nix, the material portions of which are as follows:

"Dear Mr. Nix:

"Enclosed is a copy of title opinion rendered by our attorney on October 24th. Since receiving this title opinion we have carefully reviewed this contemplated lease purchase, and have concluded that since Mr. Jameson's assignors are not in a position to deliver title to the lease that we hereby reject receipt of assignment thereof.

"We are extremely sorry that it is necessary to take this attitude but as you will recall Mr. Jameson and his assignors have been attempting to clear this title since the early part of August, and to date it is no nearer completed than it was at the time the title was first examined, on August 29th. It is our feeling that more than a reasonably lenient attitude has been adopted in this lease purchase and that every opportunity has been afforded for the perfection of this title.

"The following documents are enclosed: (listing eighteen separate title papers, the immaterial ones being here omitted)

"7. Assignment of Oil and Gas Lease from R. Brannan, Jr., and Bessie B. Brannan to Guy G. Jameson.

"9. Original Oil and Gas Lease dated August 26, 1944.

"14. Original Oil and Gas Lease dated August 26, 1944, by R. Brannan, Jr., et ux.

"15. Assignment of Oil and Gas Lease dated October 3, 1945.

"16. Assignment of Oil and Gas Lease from Guy G. Jameson to Sohio Petroleum Company.

"Yours very truly,

"Sohio Petroleum Company

"T. A. Bowles, Jr.,

"Land Department."

The plaintiff claims that the above-quoted letter is in itself sufficient to constitute such a written memorandum of the contract between the parties as to take it out of the statute of frauds. It will be noted that the letter refers to the oil and gas lease to be assigned and the assignments of such lease. The sight draft is not mentioned. It will be noted that the oil and gas lease and the assignments referred to in the above-quoted letter recite the consideration as "One Dollar (or Ten Dollars) and other good and valuable considerations." The consideration agreed to be paid by Sohio is not mentioned either in the letter or in any instrument referred to therein. The express terms of the contract are not set forth in the letter, and we do not deem it sufficient to justify specific enforcement of the verbal agreement between the parties.

The plaintiff claims that his partial performance and the conduct of the defendants are sufficient to take the oral agreement out of the statute of frauds; that he made expensive efforts to comply with Sohio's title requirements. Plaintiff claims that he was deprived of an opportunity to sell his lease to others while it had a high value. However, when the ten-day sight draft was about to expire, to wit, on August 13, 1945, the plaintiff authorized his bank in Marietta to extend the time, and left the draft and attached assignment on deposit subject to his "recall". The record does not disclose any effort or desire on the part of the plaintiff

to have the draft and assignment returned to him. It rested within his rights to call for these instruments at any time he desired, and put an end to the negotiations.

In Aikman v. Evans, 181 Okla. 94, 72 P. 2d 479, this court quoted with approval from the earlier case of Harris v. Arthur, 36 Okla. 33, 127 P. 695, wherein it set out clearly what shall constitute such partial performance of an oral contract for the sale of land, or an interest therein, as to take such oral contract out of the statute of frauds. We think the general rule is aptly and lucidly stated therein as follows:

" 'The delivery of possession to, or the assumption of exclusive and notorious possession by, the vendee under the verbal contract of sale, and with the knowledge of the vendor, accompanied by part payment of consideration; (b) or the expenditure of money by the vendee in making improvements, permanently beneficial to the estate, with the knowledge of the vendor, and in pursuance of such parol agreement of sale; (c) or where the parties have so acted under the parol agreement as to alter their position so that a restoration to the former position is impractical or impossible; (d) or where the parties have so acted under the agreement that to allow the defendant to take shelter under the statute would be to inflict an unjust and unconscientious injury or loss upon the other party.' "

Measured by the above rules, we do not think that the part performance by plaintiff was sufficient to take the oral agreement out of the statute of frauds. The defendants did hold the title papers until November 3, 1945, but such action on their part was with the voluntary consent of the plaintiff, who, as above pointed out, could have withdrawn his offer at any time after the expiration of the ten days provided for in the draft.

Plaintiff's title had been rejected a year previously, when he had agreed to sell an oil and gas lease to another company. His efforts and expense in trying to perfect his title were calculated to inure to his own benefit. The unfortunate decline in the value of oil and gas leases in the meantime should not be charged to the defendants. There is no evidence in the record from which it may be even remotely assumed that the defendants delayed acceptance of title on account of the nearby drilling well.

The doctrine of equitable estoppel is generally applied where one party has so altered his position, through the acts of the other party, that he cannot be restored to his former position. We are unable to conclude that such doctrine is applicable here.

We conclude that the written memoranda by the defendants is insufficient to take the oral agreement out of the statute of frauds, in that it fails to state the oral contract clearly or to refer to instruments from which the provisions of the contract may be obtained. We also conclude that the doctrine of equitable estoppel is not applicable, and that the oral agreement relied upon by the plaintiff is not enforceable. The judgment is therefore reversed, with instructions to the trial court to enter judgment for the defendants.

LUTTRELL, V.C.J., and WELCH, CORN, GIBSON, DAVISON, and JOHNSON, JJ., concur. O'NEAL, J., dissents.