Julia M. SMITH, Plaintiff in Error,

v.

C. J. LAWSON, Defendant in Error.

No. 37337.

Supreme Court of Oklahoma.

Nov. 20, 1956.

Rehearing Denied Feb. 19, 1957.

**142**

C. L. McArthur, Hobert G. Orton, Ada, for plaintiff in error.

Sandlin & Daugherty, Holdenville, for defendant in error.

BLACKBIRD, Justice.

This appeal arose out of an action for specific performance of a contract to purchase an oil and gas lease on a quarter section of land in Hughes County, Oklahoma. Defendant in error, who was named lessee in said lease, and will hereinafter be referred to as plaintiff, acquired it from one or more members of the LaValley, Harris and Rippy families. It was dated September 21, 1954, was for a primary term of six months, and contained a provision to the effect that if said lessee, and/or his assigns, failed to commence operations for the drilling of a well on said land on or before the expiration of 90 days from said date, the lease would be null and void. On October 14th thereafter, plaintiff in error, hereinafter referred to as defendant, went to plaintiff's home, accompanied by her son, Walter, or George Walter Smith (who knew plaintiff from having previously employed him as a driller) and orally agreed to purchase the lease from plaintiff for a cash consideration of $2,500. Before the close of the conversation, and at Smith's suggestion, a meeting was arranged for the next day at the office of an Ada, Oklahoma, law firm we will hereafter refer to as "A & B" and composed of Messrs. "A" and "B", for the purpose of having a written contract drawn. Defendant then told plaintiff that, as she had to be in Dallas, Texas, the following day, she would leave her check for the purchase money with her aforementioned son, Walter, who would act as her agent at said meeting. As per said arrangement, plaintiff and Walter Smith went together to Messrs. A and B's law office, where, after it was there drawn by attorney B, they executed the following instrument:

"Memorandum Agreement

"This Memorandum of Agreement, Made and entered into this 15th day of October, 1954, by and between C. J. Lawson and Geo. Walter Smith, Witnesseth:

"Whereas, C. J. Lawson is the owner of a certain oil and gas mining lease dated September 21, 1954, given by H. C. LaValle(-), et al, as lessors to C. J. Lawson as lessee, covering the SE/4 of Section 4–T8N–R10E, containing 160 acres, more or less, in Hughes County, Oklahoma; and

"Whereas, Julia M. Smith, by and through her agent, Geo. Walter Smith, has agreed to purchase said lease for a total consideration of $2,500.00, upon the furnishing of an assignment to said lease by the said C. J. Lawson free and clear of any liens, encumbrances or mortgages, upon the title to said property and lease being approved by

* * * (A & B) * * *, Attorneys, of Ada, Oklahoma;

"Now, Therefore, It Is Agreed As Follows:

"1. C. J. Lawson will deliver to said attorneys above named abstract of title down to date covering said leased premises, and the firm of attorneys shall have seven (7) days in which to examine the title to said property; and in the event there are any requirements made by said attorneys precedent to passing title to said property, the said C. J. Lawson shall have a reasonable time in which to meet said requirements.

"2. C. J. Lawson shall deposit with said attorneys above named an assignment of all interest in said lease to Julia M. Smith, to be held by said attorneys pending approval of title.

"3. Julia M. Smith shall deliver to said attorneys a check in the amount of $250.00, to be held by said attorneys pending approval of title, as good faith money in connection with this purchase.

"4. Upon approval of title by said attorneys, said Julia M. Smith shall deliver to the said C. J. Lawson her check for $2,250.00 representing the balance of said purchase price of said lease, and said attorneys shall deliver to C. J. Lawson the check delivered to them this date by Julia M. Smith in the amount of $250.00, and shall deliver to the said Julia M. Smith said assignment of all interest in said lease above mentioned.

"Dated this 15th day of October, 1954.

"(Signed)    C. J. Lawson
             "Julia M. Smith
             "By Geo. Walter Smith
                        "Her Agent."

In connection with the execution of said instrument, Smith left with Attorney B a check signed by his mother in the amount of the "good faith money" specified in sub-paragraph "3" of the above-quoted "Memorandum Agreement", with the name of the payee left blank. With said "Agreement" and check, an assignment of the aforesaid lease, executed by plaintiff the same day (October 15) was also left with the attorney. Thereafter B's partner, A, examined the abstract of the leased land's title furnished by plaintiff, and wrote an opinion thereon approving same, except for a requirement that plaintiff obtain a new lease executed not only by the persons who had executed his original lease, but also by the spouses of those who were married. Accordingly, Attorney A drew such a lease, naming plaintiff as the lessee and dated the same date as the original one, and a new assignment contemplated to convey to defendant any and all right, title and interest acquired by plaintiff under both the original, and the newly drafted, lease. Plaintiff then obtained execution of the new lease by the original lessors and their spouses, and returned it to A & B's law office, where it was approved by A; and, according to A's testimony at the trial, this new lease, by itself, sufficiently satisfied his aforesaid previous title requirement. Then, or at some time later, the newly drafted, but unexecuted, assignment was handed to plaintiff, and, according to his testimony, he stood ready and willing to execute it upon defendant's payment of the purchase money. In addition to showing the above and other less material facts, plaintiff introduced at the trial, over her objection, a purported copy of a letter defendant supposedly addressed to her Ada banker, under date of November 17, setting forth certain instructions to said banker concerning the drawing of a draft on her account in the amount of $2,250 (the balance of the assignment price) payable to plaintiff "care of" Attorney B, "if and when" a total of $30,000 had been deposited there. However, for some reason not specifically shown by any direct or unequivocal proof, neither the part payment check left with A & B, or any part of the purchase money balance was ever delivered to plaintiff. According to plaintiff's testi-

mony, after he had complied with the attorney's afore-described title requirement, he made several unsuccessful efforts to obtain payment from defendant, but abandoned this endeavor after expiration of the 90-day period, at which time, according to lease's afore-described drilling provision, the lease was null and void.

He then instituted the present action.

Defendant's only specific defense was that the contract sued on was unenforcible under the Statute of Frauds. In accord with this position she demurred to plaintiff's evidence. Upon the overruling of said demurrer, she introduced no evidence but elected to stand on her demurrer. The trial court thereupon sustained a motion by plaintiff for a directed verdict, and after a verdict so directed, entered judgment for plaintiff accordingly.

■■■ In this appeal from said judgment, defendant, in support of her position that the contract is unenforcible under the statute of frauds, cites the language of said statute, 15 O.S.1951 § 136, subd. 5, as follows:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

\*     \*     \*     \*     \*     \*

"5. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and *such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."* (Emphasis ours.)

She then refers to the undisputed fact that the above-quoted "Memorandum Agreement" was not signed by her. Her counsel also say that there is "not even an intimation, that Geo. Walter Smith had any authority in writing from the defendant \* \* \* to execute the contract." It is further argued on her behalf that none of the writings and documents introduced in evidence, either individually or collectively, constitute an adequate memorandum, under the above-quoted statute, of a complete and enforcible contract between her and plaintiff or are sufficient to connect her with, or make her a party to, the above-quoted "Memorandum Agreement" signed by her son. Plaintiff's testimony that said writing was a true portrayal of the parties' oral agreement is not disputed, but it is argued that there was not sufficient performance of said oral agreement or contract to take it out from under operation of the quoted statute. In support of the latter argument, defense counsel cite Sohio Petroleum Co. v. Brannan, 205 Okl. 1, 235 P.2d 279. We think this argument is untenable, and that the present case is governed by this court's opinion in Mac-Thwaite Oil & Gas Co. v. Schulte, 123 Okl. 231, 253 P. 53, cited by plaintiff's counsel. That case specifically held that the statute of frauds is inapplicable to a case where an oral contract has been completely performed except for payment of the purchase price. Everything delineated in syllabus 1 of that opinion as sufficient performance to render the statute inapplicable, was done in the present case; and, in addition, a part of the purchase price was paid. In their argument, defense counsel refer to the attorneys, A & B, as agents of the plaintiff for the examination of the title. They claim plaintiff was to bear the expense of meeting the attorneys' title requirements. It is true that A's title opinion was addressed to plaintiff, but the only reasonable inference to be drawn from the evidence is that, in this case, as is usual, he, or his firm, examined the title for defendant, as her agent, or for her protection. These attorneys were to see that plaintiff had good title to the lease before assigning to defendant, not just for his benefit, but to assure defendant that, by reason of his having good title, she would receive good title by the assignment from him. When, pursuant to said attorneys' requirement, plaintiff obtained the

new lease, and they were satisfied with it, as having met said requirement (as one of them testified he was), without the necessity of plaintiff executing the new assignment (which had been drawn apparently out of an abundance of precaution and to render unnecessary any subsequent title examiner's familiarity with the doctrine of after-acquired title) this constituted an acceptance by defendant of the original assignment. Consequently, both by reason of this fact, and the further fact that plaintiff stood ready and willing to execute the last-drafted assignment, if desired, it was unnecessary that the latter assignment be duly executed and in defendant's, or her attorneys', possession in order to constitute the complete performance by vendor which, under the holding in the MacThwaite Oil & Gas Company case, supra, renders the statute of frauds inapplicable. In all respects material to the present issue, the law firm of Messrs. A & B was the same kind of an escrow holder as was referred to in paragraphs 3 and 4 of the syllabus in Burford v. Bridwell, 199 Okl. 245, 185 P.2d 216. When plaintiff had performed his part of the contract, said firm not only held his original lease assignment irreclaimably for defendant, but also held defendant's check (which, under the contract, was delivered to said firm both as earnest money and to accomplish, upon plaintiff's performance, part payment of the contract price) irreclaimably for plaintiff. After plaintiff had performed, the check was not at her disposal, nor subject to her orders, as was the draft drawn by the vendor himself in Sohio Petroleum Corp. v. Brannan, supra; and defendant was then bound to make the payment thereby represented, as well as to pay the balance of the agreed purchase price for the lease assignment.

As we have concluded that under the MacThwaite Oil & Gas Co. decision, the statute of frauds is not applicable to an oral contract as fully performed, or executed, as was the one here involved, and that therefore proof of Geo. Walter Smith's authority, in writing, to act as

defendant's agent in the signing of the "Memorandum Agreement" was unnecessary to support the trial court's judgment, said judgment is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J.; and CORN, HALLEY, JACKSON and CARLILE, JJ., concur.

WELCH and DAVISON, JJ., dissent.