The PHILLIPS PETROLEUM COMPANY, a corporation, Appellant,

v.

Mayoe Porter BUSTER, Appellee.

The PHILLIPS PETROLEUM COMPANY, a corporation, Appellant,

v.

H. C. HITCH, Jr., et al., Appellees.

The PHILLIPS PETROLEUM COMPANY, a corporation, Appellant,

v.

Henry C. HITCH, et al., Appellees.

The PHILLIPS PETROLEUM COMPANY, a corporation, Appellant,

v.

The HITCH LAND AND CATTLE COMPANY, a corporation, et al., Appellees.

Nos. 5309–5312.

United States Court of Appeals Tenth Circuit.

Jan. 2, 1957.

Rehearing Denied March 5, 1957.

William J. Zeman, Bartlesville, Okl. (Rayburn L. Foster, Harry D. Turner, R. M. Williams, Bartlesville, Okl., and Cecil C. Hamilton, Oklahoma City, Okl., were with him on the brief), for appellant.

V. P. Crowe, Oklahoma City, Okl. (Orlando Sweet, Guymon, Okl., William J. Holloway, Jr., Oklahoma City, Okl., Tryon & Sweet, Guymon, Okl., and Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Okl., were with him on the brief), for appellees.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

BRATTON, Chief Judge.

These four cases—filed in the state court and seasonably removed to the United States court on the ground of diversity of citizenship with the requisite amount in controversy—present for determination questions relating to injunctive relief to prevent threatened disconnecting of certain deep water wells used for the irrigation of farm lands in Oklahoma from gas lines of a major producing oil and gas company. The cases are numbered 5309, 5310, 5311, and 5312, in this court. In Number 5309, Robert W. Buster and his wife were plaintiffs below; in Number 5310, H. C. Hitch, Jr., and wife, and John B. Gray and wife were plaintiffs; in Number 5311, Henry C. Hitch and wife were plaintiffs; and in Number 5312, The Hitch Land and Cattle Company, a corporation, Harry H. Hitch, and Bill Logsdon were plaintiffs. In all of the cases, Phillips Petroleum Company, a corporation, and A. M. Rippel, manager of the natural gas department of Phillips Petroleum Company were defendants. The defendant Rippel was a nominal party and no further reference will be made to him. The cases will be referred to as the Buster, the Hitch, Jr., the Hitch, Sr., and the Hitch Land Company cases, respectively; and the parties will be referred to as plaintiffs and Phillips, respectively.

Although the cases were consolidated for trial, the court made separate findings of fact and conclusions of law in each case. In the Buster case, the court made these findings of fact. Plaintiffs owned a tract of land in Texas County, Oklahoma, containing 160 acres. Phillips held oil and gas leases covering the land and had a producing gas well thereon, known as the Mayoe well. Dale Lewis was the field superintendent of Phillips. In about December, 1952, Lewis represented, promised, and agreed with plaintiffs that if they completed the drilling and equipping of an irrigation well on such land, Phillips would provide natural gas produced from the Mayoe well in the amount reasonably necessary for the operation of the water well. In reliance upon such representation, promise, and agreement, and upon the custom, practice and policy of Phillips and other companies having producing gas wells in the vicinity of the land upon which the Mayoe well was located to permit the purchase and use at reasonable prices of gas for the operation of irrigation wells, plaintiffs subsequently completed their well. The completing and equipping of the well cost about $17,000, more than $10,000 of which was expended subsequent to and in reliance upon the representation, promise, and agreement made by Lewis for Phillips. Phillips had notice and knowledge of the expenditures made by plaintiffs in completing the drilling and equipping of the well. On or about January 15, 1953, Phillips installed the valve for the connection of the water well to the gas line of Phillips for the receipt of gas for the operation of the irrigation well; and from the time of such connection, Phillips had notice and knowledge of such use of gas. Natural gas produced on the land owned by the plaintiffs at a reasonable price was the only fuel the use of which would permit irrigation for agricultural purposes of such land with reasonable assurance of

profit; and until about July, 1953, it was the general custom, practice, and policy of Phillips and other companies having producing gas wells in the vicinity of the land owned by plaintiffs to permit the purchase and use of natural gas at reasonable prices and in such amounts as were reasonably necessary for such irrigation operations. By letter dated July 23, 1953, Phillips advised plaintiffs that unless the connection between the irrigation well and the gas line from the Mayoe well was severed before September 1, 1953, Phillips would make the disconnection and would thereafter refuse to permit the purchase and use of gas produced from such well for the operation of the irrigation well. In the Hitch Land Company case, the court made these findings. Plaintiff The Hitch Land Company owned a tract of land in Texas County, containing 160 acres; plaintiff Harry H. Hitch owned a tract containing 320 acres; and plaintiff Logsdon was the tenant farming both tracts for agricultural purposes. Phillips held oil and gas leases covering such land and had a producing gas well thereon, known as the Timmons well. In about January, 1953, Lewis represented, promised, and agreed with plaintiffs that if they undertook the drilling and equipping of an irrigation well on such land, Phillips would provide natural gas produced by the Timmons well in the amount reasonably necessary for the operation of such irrigation well. In reliance upon such representation, promise, and agreement, and in reliance upon the custom, practice, and policy of Phillips and other companies having producing gas wells in the vicinity of the lands owned by plaintiffs to permit the purchase and use of natural gas at reasonable prices for the operation of irrigation wells, plaintiffs drilled and equipped the irrigation well on such land at a cost of approximately $14,000 and made further expenditures for preparation of the land for irrigation and purchase of equipment for such purpose amounting to approximately $15,000. From and after about April, 1953, Phillips permitted plaintiffs to purchase nat-

ural gas from the Timmons well reasonably necessary to operate the water well used for irrigation purposes. In other material respects, the court made findings of fact substantially identical with those made in the Buster case. In the Hitch, Jr., case the court made these findings of fact. Plaintiffs owned a tract of land in Texas County, containing 320 acres. Phillips held oil and gas leases covering the land and had a producing gas well thereon known as the Knott well. Until about July, 1953, it was the general custom, practice, and policy of Phillips and other companies having producing gas wells in the vicinity of the land owned by plaintiffs to permit the purchase and use of natural gas at reasonable prices and in such amounts as were reasonably necessary for irrigation operations from gas wells on irrigated lands. In reliance upon such custom, practice, and policy, plaintiffs drilled and equipped an irrigation well on their land at a cost of approximately $14,000 to $15,000, and made further expenditures for the equipment of such well of about $10,000 to $12,000, with further expenses in the preparation of the land for irrigation, thereby making a total investment of about $25,000. The irrigation well was completed in the spring of 1953, and from that time Phillips permitted plaintiffs to purchase and use gas from the Knott well to operate the irrigation well. In all other material respects, the court made findings of fact identical or substantially so with those made in the Buster and the Hitch Land Company case, except that the court did not find that Phillips ever represented, promised, and agreed that if plaintiffs undertook the drilling and equipping of the well for irrigation purposes Phillips would provide for the operation of such well gas produced from the Knott well, or that Phillips took any part in effecting the connection of the irrigation well with the gas line of Phillips. In the Hitch, Sr., case, the court made these findings of fact. Plaintiffs owned a tract of land in Texas County, containing 640 acres. Phillips held oil and gas leases covering the land and had

thereon a gas producing well, known as the Place well. Until about July, 1953, it was the general custom, practice, and policy of Phillips and other companies having producing gas wells in the vicinity of the land of plaintiffs to permit the purchase and use of natural gas at reasonable prices and in such amounts as were reasonably necessary for such irrigation purposes from gas wells on irrigated land. In reliance upon such custom, practice, and policy, plaintiffs drilled and equipped two irrigation wells on their land and made further expenditures for the preparation of the land for irrigation at a total outlay of about $45,000. From and after the completion of such wells in about the middle of 1951 and the fall of 1952, respectively, Phillips permitted plaintiffs to purchase and use natural gas from the Place well reasonably necessary to operate the two irrigation wells. In all other material respects, the findings of fact were substantially identical if not completely identical with those made in the Buster case and in the Hitch Land Company case, except that the court did not find that Phillips ever represented, promised, and agreed with plaintiffs that if they undertook the drilling and equipping of the wells for irrigation purposes, Phillips would provide gas for such purpose from the Place well, or that Phillips participated in any manner in effecting the connection of the irrigation wells with the gas line of Phillips. The court made identical conclusions of law in the several cases. The court concluded as matters of law that Lewis had authority to make the representation, promise, and agreement; that by reason of its representation, promise, agreement, and conduct, Phillips was obligated to permit plaintiffs to purchase and use gas produced from the gas wells for the operation of the irrigation wells; that plaintiffs would suffer irreparable injury if the irrigation wells were disconnected from the gas lines; that Phillips was estopped to deny or repudiate its obligation to furnish gas for the operation of the irrigation wells; that Phillips was estopped to assert the statute of frauds; and that injunctive relief should be granted. In each case, the court entered judgment enjoining Phillips from disconnecting the gas line connecting the well of plaintiffs from the gas line of Phillips and from failing or refusing to permit the purchase and use at a reasonable price and in a quantity reasonably necessary for the operation of the irrigation well owned by plaintiffs. 133 F.Supp. 594. Separate appeals were perfected but the several cases were submitted in this court on a single record.

■■ The judgments are challenged upon the ground that Lewis lacked authority to enter into the oral agreements in respect to the furnishing of natural gas for the operation of the irrigation wells. In the Buster and the Hitch Land Company cases, the court found that oral agreements were entered into, but in the Hitch, Jr. and the Hitch, Sr. cases the court did not make such findings and the record is completely barren of evidence indicating that in those cases agreements of that kind were entered into. Therefore, this contention and all other contentions subsequently considered concerning the oral agreements relate only to the Buster and the Hitch Land Company cases. The headquarters of Phillips are located in Bartlesville, Oklahoma. Lewis had been in the employ of the company for more than ten years. He resided at the Hansford plant of the company, held the position of area superintendent, was in charge of the company offices in Texas County, and had field men under his supervision. The Sherman and Hansford gathering systems were within his area. They included the gas fields of the company in Texas County. And it was the general custom and practice for farmers and owners of land in the area to deal with Lewis as the agent and representative of Phillips. It is the law in Oklahoma that apparent authority exists when the principal, by statement or conduct, either places the agent in position in which he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such position so that third per-

sons are justified in believing that he is acting within his authority. Rosser-Moon Furniture Co. v. Oklahoma State Bank, 192 Okl. 169, 135, P.2d 336; Knapp v. Ottinger, 206 Okl. 113, 240 P.2d 1083. Having held Lewis out to the public as its agent with apparent authority to act for it in respect to ordinary local matters arising within the area of which he was superintendent, Phillips cannot be heard to challenge his authority to enter into the oral agreements even though the instructions given Lewis were to refer to the home office of the company for action all applications or requests for gas with which to operate irrigation wells, unless plaintiffs had notice or knowledge of such instructions. Guardian Foundation v. Turner, 191 Okl. 313, 129 P.2d 592. And the court did not find that at the time the agreements were entered into plaintiffs had any such notice or knowledge.

■ The judgments are challenged upon the further ground that the oral agreements were at most mere agreements to make future contracts without any meeting of the minds of the parties. The evidence presented sharp conflicts in respect to the substance of the oral agreements. But the court resolved the conflicts. In each instance, the court found in substance that by the oral agreement the parties intended to reach and did reach a present understanding that if the well was drilled or the drilling completed and water was found gas would be supplied for the operation of the well. The court found in effect that by entering into the oral agreements the parties made present commitments and assumed immediate obligations rather than merely agreeing to enter into a future contract. The findings of the court in that respect are supported by substantial evidence and are not clearly erroneous. Therefore they must stand on appeal. Accordingly, there is no sustainable factual basis in the record for the contention that by the oral agreements the parties merely agreed to enter into effectual contracts later.

■ The judgments are attacked upon the additional ground that the oral agreements were unenforceable for indefiniteness and uncertainty. Harmonizing in full measure with the general principle of law obtaining elsewhere, it is the rule in Oklahoma that the destruction of contracts or agreements for vagueness and uncertainty is disfavored; and that if a contract or agreement is sufficiently definite and certain in its totality that the intention of the contracting parties can be ascertained with reasonable certainty, it is not void for indefiniteness and uncertainty even though it fails to enter into all of the details respecting the subject matter, especially where there has been partial performance. Harlow Publishing Co. v. Patrick, 181 Okl. 83, 72 P.2d 511; Oklahoma Portland Cement Co. v. Pollock, 181 Okl. 266, 73 P.2d 427; Webb v. Moran, 186 Okl. 140, 96 P.2d 308; Brown v. Bivings, Okl., 277 P.2d 671. The oral agreements each related only to the furnishing of natural gas for the operation of the water well located on the land of plaintiffs. The quantity of gas to be furnished was the amount reasonably necessary for the operation of the well during the irrigation season. And the gas was to be furnished from the line of Phillips on the land of plaintiffs. These constituent elements were implicit or implied in each agreement. And viewed in the light of them, the agreements were sufficiently definite to enable the court to fix a reasonably exact meaning to its terms. Therefore, the agreements were not fatally infirm for indefiniteness and uncertainty.

■ Another ground of attack upon the judgments is that the oral agreements lacked mutuality of obligation. The channel of the argument is that there was no agreement in respect to the term or duration of the agreements; that there was no agreement respecting the extent or length of time plaintiffs would irrigate their lands; that there was no agreement concerning the volume of gas plaintiffs would take; that there was no agreement that plaintiffs would not

change to some other type of fuel; that they could take or not take gas at their own whim or caprice; and that in the event they should cease to take gas, Phillips would be without recourse of remedy. Most of the cases cited in support of the contention were cases for specific performance. In Oklahoma, in order to be subject to enforcement by an action for specific performance, a contract or agreement must be mutual in respect to obligations and remedy. Thompson v. Giddings, Okl., 276 P.2d 229. And specific performance will not be decreed where an executory contract or agreement leaves it optional with one of the parties whether he will proceed with the contemplated enterprise. Superior Oil & Gas Co. v. Mehlin, 25 Okl. 809, 108 P. 545; Sohio Petroleum Co. v. Brannan, 205 Okl. 1, 235 P.2d 279. But these were not actions for specific performance of the oral agreements. They were actions to enjoin threatened refusal to discharge an obligation resting upon Phillips to furnish gas, and the basis of the asserted relief was equitable estoppel. The oral agreements for the furnishing of gas for the operation of the water wells having been entered into with the mutual intent and purpose that plaintiffs would act in reliance thereon, plaintiffs having acted in such reliance by making substantial expenditures in the drilling or the completing of the drilling of the wells and in preparing the land for irrigation, and plaintiffs being in reasonably certain danger of suffering irreparable injuries for which there would be no adequate remedy at law if the furnishing of gas were discontinued, equity finds support in the law of Oklahoma for intervening and restraining the threatened discontinuance of the furnishing of gas. Lacy v. Wozencraft, 188 Okl. 19, 105 P.2d 781; Holland v. Ross, 189 Okl. 428, 117 P.2d 798.

The remaining attack upon the judgments predicated upon asserted invalidity of the oral agreements is that such agreements were void under the statute of frauds. The statute of frauds of Oklahoma provides among other things that an agreement which by its terms is not to be performed within one year from the making thereof shall be invalid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent. 15 O.S.1951 § 136. But these were not actions for the enforcement of the oral agreements. They were actions to restrain wrongful discontinuance of the furnishing of gas pursuant to the terms of the agreements. And having entered into the agreements with the mutual intent and purpose that plaintiffs would act in reliance thereon, plaintiffs having acted in that manner, and it being reasonably certain that plaintiffs will sustain irreparable injuries for which they do not have any adequate remedy at law if the furnishing of gas is discontinued, Phillips is estopped to invoke the statute of frauds. Lacy v. Wozencraft, supra.

The judgments in the Hitch, Jr., and the Hitch, Sr., cases are assailed upon the ground that the court erred in holding that by reason of custom, practice, and policy, Phillips was obligated to furnish gas for the operation of the irrigation wells. As previously stated, the court found in each of these cases that until July, 1953, it was the general custom, practice, and policy of Phillips and other companies having producing gas wells in the vicinity of the land owned by plaintiffs to permit the purchase and use of gas at reasonable prices and in amounts reasonably necessary for irrigation operations from gas wells on irrigated lands. Evidence was adduced tending to show that Skelly Oil Company furnished gas for the operation of six irrigation wells, and there was evidence that several farmers used gas for the operation of their irrigation wells. But the evidence was general and did not extend into details respecting the terms or conditions upon which such gas was supplied, either by Skelly or other companies. Excluding the cases involved here, Phillips in only eight instances furnished to farmers gas for

the operation of irrigation wells. In each of those instances, the furnishing of the gas was covered by a written contract which was explicit in respect to quantity, measurement, delivery, price, payment, indemnity, force majeure, and assignment. And each contract expressly reserved to either party the right to terminate the contract at the expiration of one year from the date thereof or on any anniversary date thereafter by giving to the other party thirty days notice in writing of an intention to do so, after which each party should be released from all further liability thereunder. In no instance did Phillips assume a continuing obligation to furnish gas indefinitely with no right of termination reserved unto itself. In order to have pertinence or be effective to establish an obligation or duty on the part of Phillips to furnish gas to plaintiffs, custom, practice, or policy must be predicated upon facts and circumstances fairly comparable to those presented here. And in the absence of evidence tending to establish the existence of a custom, practice, or policy arising out of facts and circumstances fairly similar in general aspects to those presented here, we fail to find any basis for the conclusion that custom, practice, or policy, enjoined upon Phillips the asserted obligation to furnish gas to plaintiffs for the operation of their irrigation wells.

Finally, the Legislature of Oklahoma, at its session in 1955, passed an act relating to natural gas and the use thereof on the premises from which it is produced to pump to the surface water to be used for irrigation on such premises, and for other purposes. 52 O.S. 1955 Supp. § 248 et seq. The act provides among other things that every person owning or operating any well from which natural gas is produced, sold, or used off the premises on which the well is located, shall upon request, make gas available to the person engaged in agricultural activities upon such premises in sufficient quantities for the operation of irrigation pumps thereon. If the act were valid, perhaps it would be effective to require Phillips to furnish to plaintiffs gas for the operation of their irrigation wells. But in a recently decided case, it was held that the act contravenes due process of law and therefore is invalid. Phillips Petroleum Co. v. Corporation Commission of Oklahoma, Okl., —— P.2d ——. Accordingly the act lends no aid to plaintiffs.

The judgments in the Buster and the Hitch Land Company cases, respectively, are severally Affirmed; and the judgments in the Hitch, Jr., and the Hitch, Sr., cases, respectively, are severally Reversed and the causes are Remanded with directions to dismiss the actions.

LEWIS, Circuit Judge (concurring).

I concur unqualifiedly in the reversal of the judgments in the Hitch, Jr., and Hitch, Sr., cases, and concur in the affirmance of the judgments in the Buster and the Hitch Land Company cases because I cannot say that the finding of the trial court holding Phillips' promise to furnish gas to be without limitation as to time is clearly erroneous. However, I believe the record would support a finding that Phillips' promise was limited to the supplying of gas in accordance with the actual contract submitted to Buster and signed by him but subsequently rejected by Phillips. I would prefer such a finding and a consequent limitation upon the relief granted.